**MERION PUBLICATIONS, INC., Petitioner**

v.

**COMMONWEALTH of Pennsylvania, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Nov. 14, 2005.

Decided Jan. 11, 2006.

---

David M. Kuchinos, Philadelphia, for petitioner.

Kevin A. Moury, Sr. Deputy Attorney General, Harrisburg, for respondent.

BEFORE: COLINS, President Judge, and LEADBETTER, Judge, and McCLOSKEY, Senior Judge.

OPINION BY Judge LEADBETTER.

Petitioner Merion Publications, Inc. petitions for review of the order of the Board of Finance and Revenue, which denied its request for relief from the assessment of a sales and use tax deficiency resulting from its failure to pay taxes upon fees paid to independent printers for printing and distributing its various industry specific publications. The issue on appeal is whether Merion's publications constitute "direct mail advertising literature or materials," which are exempt from tax pursuant to Section 204 of the Tax Reform Code of 1971 (Code),[1] as amended, 72 P.S. § 7204. If Merion's publications constitute "direct mail advertising literature or materials," then Merion is not liable for taxes on the fees paid to the independent printers.

 The parties' stipulation of facts[2] indicates that Merion publishes a variety of publications, referred to as "Advance Newsmagazines," on a weekly to bi-monthly basis. The Advance Newsmagazines are devoted to particular segments of the medical and healthcare industry,[3] and generally include a cover story and additional feature stories of interest, as well as employment opportunities and general product and service advertising for the types of products and services used by persons in the targeted industry. The Advance Newsmagazines are distributed free of charge to any medical or healthcare professional or student requesting one. Merion's revenues are derived from charges paid by those advertising in the magazines.[4] Merion operates with four divi-

---

1. Act of March 4, 1971, P.L. 6.

2. This court hears appeals from the Board de novo based upon either a record created before the court or stipulated facts. See Pa. R.A.P. 1571(h); Plum Borough Sch. Dist. v. Commonwealth, 860 A.2d 1155 (Pa.Cmwlth. 2004).

3. For instance, Merion publishes Advance Newsmagazines for nurses, LPNs, imaging and radiation therapy professionals, audiologists, physician assistants, and occupational therapy practitioners.

4. We use the term "magazine" in the general sense and not as it is defined in the Department of Revenue's regulations. In order to constitute a "magazine" under the Department's regulations, the publication must be available for purchase. Specifically, a "magazine" is defined as:

A publication that is published at regular intervals not exceeding 3 months, that is circulated among the general public, and contains matters of general interest and reports of current events that are published for the purpose of disseminating information of a public character or is devoted to

sions: sales and marketing, editorial, art and production, and general administration. Merion's employees prepare the content of the magazines by writing articles and editorials, soliciting articles from other professionals and selling advertising space. Once sufficient content exists, the art and production department designs the layout for the issue. Merion then sends computerized application files containing the magazine layout and content to an independent printer. The printer, using the application files provided by Merion, performs a series of operations related to producing multiple copies of the issue, including printing and binding, attaching labels from a mailing list provided by Merion and distributing the magazines directly to the intended recipients through the United States Postal Service. The printer then charges Merion for the printing services but does not impose or collect any taxes.

Following an audit of the period January 1, 1999, through April 30, 2002, the Department of Revenue (Department) determined that Merion was liable for use tax on the printers' charges for magazines that were mailed to recipients in Pennsylvania. Both the Board of Appeals and the Board of Finance and Revenue (Board) affirmed. The Board concluded that Merion was not entitled to the direct mail advertising exemption because Merion was advertising for other companies rather than on its own behalf. Consequently, the Board concluded that all printers' charges were subject to tax. The parties have stipulated that if Merion's position is accepted, Merion is liable for taxes in the amount of $11,526.42. However, if the Department is correct that Merion is not entitled to the exemption claimed, Merion is liable for taxes in the amount of $164,428.11.[5]

In determining whether Merion is liable for the taxes assessed, we begin with the applicable statutory and regulatory provisions.[6] First, we note that pursuant to Section 202(a) of the Code, a tax of six percent is imposed on "each separate sale at retail of tangible personal property or services, as defined herein, within this Commonwealth...." 72 P.S. § 7202(a). Similarly, pursuant to Section 202(b), a tax of six percent is imposed on the use "within this Commonwealth of tangible personal property purchased at retail ... and on those services described herein purchased

---

literature, the sciences, art or some special industry. The term does not include loose leaf information services.
61 Pa.Code § 31.29. "Circulated among the general public" is defined, in turn, as:
> Made available for purchase from a retail outlet, such as a newsstand or bookstore, or made available for purchase by subscription.
> ...
Id. (emphasis added).Thus, since the magazines in the present case are distributed free of charge and are not available for purchase, they do not constitute a "magazine" as that term is used in the regulations.

5. The Board of Appeals abated the penalties that were imposed in addition to the tax liability.

6. In general, tax statutes are strictly construed against the Commonwealth and any

reasonable doubts as to a provision's application to a particular case are resolved in favor of the taxpayer. Plum Borough Sch. Dist., 860 A.2d at 1157 n. 3. However, exemptions, which appear in Section 204 of the Code, are construed against the taxpayer. Id. at 1157–58 n. 4. As this court explained in Plum Borough:
> Exemptions are items which are within the scope of the general language of the statute imposing the tax, while "exclusions are items which were not intended to be taxed in the first place." ... The legal effect of that distinction is that exemptions are to be strictly construed against the taxpayer; exclusions are to be construed against the taxing body....
Id. (citations and quotations omitted).

at retail...." 72 P.S. § 7202(b). A "sale at retail" is defined to include, "[t]he rendition of the service of printing or imprinting of tangible personal property for a consideration for persons *who furnish, either directly or indirectly, the materials used in the printing or imprinting.*" Section 201(k)(2) of the Code, 72 P.S. § 7201(k)(2) (emphasis added). Likewise, "use" is defined to include, "the obtaining by a purchaser of the service of printing or imprinting of tangible personal property when such *purchaser furnishes, either directly or indirectly, the articles used in the printing or imprinting.*" Section 201(*o*)(2) of the Code, 72 P.S. § 7201(*o*)(2) (emphasis added).

Pursuant to the exemptions contained in Section 204,[7] however, the tax imposed by Section 202 is not imposed upon, *inter alia:*

> (30) The sale at retail or use of newspapers. For purposes of this section, the term "newspaper" shall mean a "legal newspaper" or a publication containing matters of general interest and reports of current events which qualifies as a "newspaper of general circulation" qualified to carry a "legal advertisement" as those terms are defined in 45 Pa.C.S. § 101 (relating to definitions), not including magazines. *This exclusion shall also include any printed advertising materials circulated with such newspaper regardless of where or by whom such printed advertising material was produced.*
>
> ....
>
> (35) The sale at retail or use of mail order catalogs and direct mail advertising literature or materials, including electoral literature or materials, such as envelopes, address labels and a one-time license to use a list of names and mailing addresses for each delivery of direct mail advertising literature or materials, including electoral literature or materials, through the United States Postal Service.
>
> ....
>
> (50) The sale at retail or use of subscriptions for magazines. The term "magazine" refers to a periodical published at regular intervals not exceeding three months and which are circulated among the general public, containing matters of general interest and reports of current events published for the purpose of disseminating information of a public character or devoted to literature, the sciences, art or some special industry. *This exclusion shall also include any printed advertising material circulated with the periodical or publication regardless of where or by whom the printed advertising material was produced.*

72 P.S. § 7204 (emphasis added).

The Department's regulations provide further instruction on the taxation of printing activities as well as the exemption for "direct mail advertising literature or materials." First, there are several general provisions that mirror the Code. Section 31.1(4) of the regulations provides that for purposes of imposing a tax on the sale at retail or use within the Commonwealth of tangible personal property and certain services, the service of "imprinting or printing of tangible personal property *furnished by others*" is subject to tax. 61 Pa.Code § 31.1(4)(v) (emphasis added).[8] Like the

---

7. We note that while Section 204 denominates its provisions as "exclusions from tax," this court has construed Section 204 to provide for exemptions from tax. *Plum Borough Sch. Dist.,* 860 A.2d at 1158 n. 4.

8. Further, 61 Pa.Code § 31.5, entitled, "Persons rendering taxable services," provides that:

> (a) *Imposition.* The following services rendered upon tangible personal property are

Code, Section 31.3 provides that the sales and use tax does not apply to, inter alia, the "sale at retail or use of mail order catalogs and direct mail advertising materials." 61 Pa.Code § 31.3(18).

The Department's regulations also contain provisions governing the taxation of specific businesses and items. Specifically with respect to advertising materials, Section 31.29, entitled "Books, publications and advertising materials," provides that:

(1) Except as otherwise provided in this subsection, the sale at retail or use of publications, advertising inserts, Bibles, religious publications ... and advertising literature or materials is subject to tax when delivered to a location within this Commonwealth.

(2) The sale at retail or use of the following items is exempt from tax:

(i) Mail order catalogs.

(ii) Direct mail advertising literature or materials. See § 32.36 (relating to printing and related businesses).

. . . .

(iv) Newspapers.

(v) Magazines sold by subscription.

(vi) Advertising inserts [9] that become a part of a newspaper or magazine.

(vii) One time license fees paid for the use of a listing of names and mailing addresses for each delivery of direct mail advertising literature or materials.

61 Pa.Code § 31.29(b) (footnote added). "Advertising literature or materials" is defined in Section 31.29 as "[t]angible personal property that is intended to promote business interest, create goodwill or engage the attention or interest of a recipient" and includes such items as printed matter, brochures, calendars, price lists, investment prospectuses, electoral literature or materials, playing cards and similar promotional materials. *Id.* at § 31.29(a). "Direct mail advertising literature or materials" is defined, in turn, as "[a]dvertising literature or materials that are distributed directly to intended recipients through the United States Postal Service. The term does not include advertising literature or materials that are distributed in a manner other than by the United States Postal Service." [10] *Id.*

The regulations governing business exemptions provide an exemption for certain

"taxable services" whether or not tangible personal property is transferred in conjunction with the rendition of the services: ... (5) Printing or imprinting tangible personal property *for persons furnishing the materials used in the operations.* The services shall be taxable whether the person for whom they are rendered or the person's agent supplies the materials.... [Emphasis added].

9. An "advertising insert" is defined as "[p]rinted advertising material that is circulated with another publication." 61 Pa.Code § 31.29(a).

10. Merion takes special note that until March of 2000, "direct mail advertising literature or materials" was defined as:
Tangible personal property which is distributed through the mail and is intended to promote business interest, create good will

or engage the attention or interest of the prospective purchaser. The property includes printed matter, brochures, matchbooks, calendars, price lists and similar materials.

Former 61 Pa.Code § 31.29. Thus, prior to March of 2000, there was not a separate definition for advertising literature or materials and direct mail advertising literature or materials. Former Section 31.29 simply provided that the sale at retail or use of, inter alia, "[m]ail order catalogs and direct mail advertising literature or materials [see § 32.36 (relating to printing and related businesses)]" was exempt from tax. Merion does not appear to argue, however, that this amendment to Section 31.29 changes the analysis of the statutory scheme for purposes of this appeal.

printing activities. Section 32.36, which is also referenced in Section 31.29, provides, in pertinent part:

(b) *Sales by printer.* Sales by printers shall conform with the following:

(1) *Generally.* Tax shall be collected by a printer upon the sale at retail of taxable printed matter. See § 31.29 (relating to books, printed matter and advertising materials). The tax applies to the charge for printing services.

(2) *Printed matter not qualifying as direct mail advertising literature or materials or mail order catalogs.* Generally, printers include as an element of the purchase price to customers' charges for service or labor pertaining to the printing or preparing of the printed matter. Charges for printing, imprinting, engraving ... addressing, folding, enclosing, packaging and selling are included in the purchase price, and tax shall be collected with respect to charges....

. . . .

(3) *Printed matter qualifying as direct mail advertising materials or mail order catalogs.* A charge for the sale of mail order catalogs and direct mail advertising literature or materials is exempt from tax. A charge incidental to the sale of mail order catalogs and direct mail advertising is also exempt from tax....

(4) *Printing services.*

(i) The exemption relating to the purchase of direct mail advertising literature or materials and mail order catalogs is confined to transactions in which the printer provides both the printing service and the material to be imprinted. If the printer performs printing services upon paper, cardboard or other material furnished by the purchaser of the services or a third party, the charges are subject to tax even though the finished product qualifies as direct mail advertising literature or material or mail order catalog.

. . . .

(ii) Copy, artwork, photographs, plates, separations and other preparations and image carriers are items which, if provided by the customer, will not cause a charge for printing to be taxable, if the customer does not also supply the material receiving the printing image.

*Example:* Printer "A" imprints paper for customer "Y." "A" supplies the paper. "Y" supplies the plates and artwork. The letters are intended to promote business and will be mailed directly to "Y's" customers. This material does qualify for the direct mail advertising exemption. "Y" is exempt from tax on the charges by "A."

61 Pa.Code § 32.36.

Finally, Merion draws the court's attention to the Department's attempt in 1997 to amend the definition of "direct mail advertising literature or materials" to: "Advertising literature or materials *purchased and distributed by a vendor to prospective purchasers* by the United States Postal Service. The term does not include property distributed to the prospective purchaser by other than the United States Postal Service...." *See* Proposed Rule Making, 27 Pa. Bull. 6572, Stipulation of Facts (SOF), Ex. E. Apparently, the Independent Regulatory Review Commission (IRRC) filed comments objecting to the Department's intent to require that the literature or materials be "distributed by a vendor" because this would unduly restrict application of the exemption and no such limitation was found in the Code. *See* SOF, Ex. F. The Department agreed with the comments and deleted the references to both "ven-

dor" and "prospective purchasers." *Id.* at Ex. G.

■ Keeping the above statutory and legal framework in mind, we turn to the arguments on appeal, Merion notes that there is no dispute that its magazines[11] constitute printed matter that is intended to promote business interest, create good will and engage the attention or interest of a recipient. Indeed, the parties have stipulated that Merion is "advertising." Accordingly, Merion contends that its magazines constitute "advertising literature or materials" as that term is defined in 61 Pa.Code § 31.29(b). Merion further contends that since the parties have stipulated that its magazines are distributed directly through the United States Postal Service, they also constitute "direct mail advertising literature or materials" as defined in Section 31.29(b).

According to Merion, the Department's view that an entity must be advertising on its own behalf in order to fall within the definition of "direct mail advertising literature or materials" is not supported by the statutory or regulatory language; rather, the Department's construction requires that the phrase "direct mail" be construed to mean "vendor direct mail." Merion further notes that the exemption is complete-ly silent regarding on whose behalf the advertising must be done. Merion contends that use of the term "direct" renders the exemption applicable to advertising materials that are sent through the mail directly to the intended recipient rather than sent to one recipient who then engages in further distribution activities.[12] Accordingly, Merion concludes that its magazines constitute "direct mail advertising literature or materials" as defined such that the exemption for printing charges set forth in 61 Pa.Code § 31.29 applies.

Merion also notes that the Department's position in this case is directly contrary to its concession in 1997 that, defining "direct mail advertising literature or materials" to require "purchase and distribution by a vendor to prospective purchasers" was contrary to and would unduly restrict the direct mail advertising exemption. Finally, Merion contends that the Department's construction of the statute and regulations is unconstitutional because the Department has not asserted any justification for subjecting direct mail advertisers to the tax if they advertise for others but not on behalf of themselves.

The Commonwealth continues to pursue the position that the "direct mail advertising literature or materials" exemption can only apply to advertising materials that

---

**11.** Again, this term is used in the general sense.

**12.** Merion notes that other jurisdictions have adopted this definition of "direct mail" in their sales and use tax provisions. Specifically, Merion notes that Minnesota, Nebraska, New Jersey, North Carolina and Washington have generally defined "direct mail" as follows (there are some minor non-substantive differences in wording among the various states):

Printed material delivered or distributed by the Unites States Postal Service or other delivery service to a mass audience or to addresses on a mailing list provided by the purchaser or at the direction of the pur-chaser when the cost of the items is not billed directly to the recipients. The term includes tangible personal property supplied directly or indirectly by the purchaser to the direct mail seller for inclusion in the package containing the printed material. The term does not include multiple items of printed material delivered to a single address.

*See generally* Minn.Stat. § 297A.61(35); Neb. Rev. St. § 77–2701.12; N.J. Stat. Ann. § 54:32B–2(ss); N.C. Gen. Stat. § 105–164.3(7a); Wash. Rev. Code § 82.08.010. We note that this authority is neither persuasive nor illuminating since our legislature has not expressly defined "direct mail."

are sent directly from the vendor to the prospective purchaser. According to the Commonwealth:

> [T]he only interpretation which will give meaning to the word "direct" in the statute is to only permit exemption when the advertising materials are sent directly from the vendor to the prospective purchaser. The use of the term "direct mail advertising" implies that there is such a thing as indirect mail advertising or, at least, mail advertising that is not direct. That is what this case is—the advertisements in question are on behalf of vendors that are not the Taxpayer. . . .

Respondent's brief at 8. Finally, the Commonwealth contends that the phrase "intended recipients" in the definition of direct mail advertising "must be limited to prospective customers of the party doing the advertising,' [sic] not the party that is publishing the magazine." *Id.* at 9. In making the above argument, the Commonwealth emphasizes that as an exemption, the provision must be construed against Merion.

Our research has not revealed any appellate decisions in this Commonwealth and the parties have not cited to any that construe the direct mail advertising exemption in a similar context. However, we conclude that Merion's construction is consistent with the plain language of the exemption and consistent with the remainder of the statutory scheme.

First,[13] we agree that a plain reading of the statute does not support a construction that the exemption applies only to advertising materials mailed directly from a vendor to prospective purchasers. Rather, we construe the term "direct" in the direct mail advertising exemption to apply where the advertising literature reaches the recipient directly following deposit in the mail. The Commonwealth's construction is too narrow and incorporates limiting language simply not present in the exemption. Had the legislature intended such a result, it could have defined direct mail advertising in the same manner advocated by the Commonwealth.

In addition, we conclude that the Commonwealth's construction is inconsistent with the present statutory scheme. We note that the exemptions for both newspapers and magazines include the provision that: "This exclusion shall also include any printed advertising material circulated with the periodical or publication [or newspaper] regardless of where or by whom the printed advertising material was produced." *See* Section 204, 72 P.S. § 7204. Thus, if advertising material is included with a magazine or newspaper, it is afforded the exemption from tax available to those classifications of printed matter. Clearly, in those cases, the advertising material is not emanating directly from the vendor to the prospective purchaser. Therefore, construing the direct mail advertising exemption to apply only to advertising materials mailed directly from the vendor renders an illogical result; it is inconsistent with the remainder of the tax scheme and subjects advertising materials that do not emanate directly from the vendor to different tax treatment without any apparent reason. However, construing the direct mail advertising exemption as advocated by Merion is consistent with the exemption afforded advertising materials that are included in magazines and newspapers. Accordingly, we reject the Commonwealth's and Board's interpretation and conclude that the "direct mail advertising" exemption applies to advertising literature and materials that are delivered

---

13. It is beyond peradventure that the printing charges are not taxable pursuant to Section 201(k)(2) or (*o*)(2) because Merion did not provide the materials used in the printing.

directly to the intended recipient once placed in the United States mail; the advertising materials do not need to be mailed by the vendor. Accordingly, the Board erred in concluding otherwise and imposing a use tax on the printing charges paid by Merion.

The order of the Board is reversed.

### ORDER

AND NOW, this 11th day of January, 2006, the order of the Board of Finance and Revenue in the above-captioned matter is hereby REVERSED. Judgment shall become final unless exceptions are filed within 30 days of this order pursuant to Pa. R.A.P. 1571(i).